**UNITED STATES**

v.

**CUONG GIA LE, et al. Defendants.**

**No. 1:03 CR 048(TSE).**

United States District Court,
E.D. Virginia,
Alexandria Division.

April 30, 2004.

James Trump, Assistant United States Attorney, United States Attorney's Office, Alexandria, VA, for Plaintiff.

Frank Salvato, Alexandria, James Goodman Connell, III, Devine & Connell PLC, Fairfax, VA, Marvin D. Miller, Dale W. Dover, Alexandria, VA, for Defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

In this multi-defendant multi-count RICO[1] prosecution, two of the remaining defendants attack counts of the Fifth Superseding Indictment[2] that allege (i) violent crimes in aid of racketeering activity, in violation of 18 U.S.C. § 1959 (VICAR), and (ii) the use and carrying of a firearm during and in relation to a violent crime in aid of racketeering, in violation of 18 U.S.C. § 924(c). These counts charge defendants with assault with a dangerous weapon in violation of Virginia's malicious or unlawful wounding statute, Va.Code

---

1. Racketeer Influenced and Corrupt Organizations Act, codified at 18 U.S.C. § 1961 *et seq.*

2. There have been six indictments in this case: the original indictment plus five superseding indictments. The original indictment and the First Superseding Indictment charged defendant Cuong Gia Le and four defendants—Tuyen Cao Phung, Thanh Quina, Cuong Quoc Tcheou, and Thang Quoc Vo. Phung, Quina, Tcheou, and Vo have all since pled guilty and thus are not charged in subse-

quent superseding indictments. Defendants Phu Van Ho, Loc Tien Nguyen, Nam Nguyen, Nguyen Nguyen, Vu Hoang Nguyen, and Ky Truong Quach were not charged until the Second Superseding Indictment. Of these seven defendants, four—Nam Nguyen, Nguyen Nguyen, Vu Hoang Nguyen, and Quach— have since pled guilty. For a description of all the indictments in this case up to the Fourth Superseding Indictment, see *United States v. Cuong Gia Le, et al.,* 310 F.Supp.2d 763 (E.D.Va.2004).

§ 18.2–51, or brandishing statute, Va.Code § 18.2–282, in aid of racketeering. Defendants seek dismissal of these counts on the ground that the elements of malicious or unlawful wounding and brandishing under Virginia law do not match—element-by-element—with the elements of assault with a dangerous weapon, as defendants contend is required by § 1959.[3] Therefore, the question presented by defendants' dismissal motion is whether counts alleging an assault with a dangerous weapon in violation of state law pursuant to 18 U.S.C. § 1959 must be dismissed if the elements of assault with a dangerous weapon, as that crime is generically defined, do not match—element-by-element—with the elements of the state law allegedly violated. More precisely, the question with regard to counts three, four, seven, sixteen, seventeen, and twenty-three is whether, as defendants contend, it is necessary for the elements of a generic assault with a dangerous weapon to match—element-by-element—with the elements of the crime of brandishing, as defined in Virginia law, Va.Code § 18.2–282. And, the precise question with regard to count twelve is whether, as defendants contend, it is necessary for the elements of a generic assault with a dangerous weapon to match—element-by-element—with the crime of malicious or unlawful wounding, as defined in Virginia law, Va.Code § 18.2–51.

### I.

The essential facts underlying the Indictment as a whole may be summarized briefly. To begin, the Indictment alleges that the seven charged defendants, four of whom have already pled guilty, are active members of a criminal enterprise or gang consisting primarily of Vietnamese youth and known as the "Oriental Playboys" or "OPB." The defendants and other OPB members allegedly socialized and lived together and often engaged in acts of violence together. More specifically, according to the Indictment, defendants and other OPB members committed various crimes, including burglary, drug distribution, credit card fraud, murder, assault, robbery, and firearms violations in Virginia, Maryland, and elsewhere between August 2000 and July 2003 for the purposes of enriching OPB members and enhancing the power, status, and position of OPB in the community. Much of the alleged violence perpetrated by OPB members was intended to protect its members from, or to retaliate against, known rival youth gangs, such as the "Dragon Family" and the "Oriental Bloods." Central to the Indictment is the allegation that defendant Cuong Gia Le shot four individuals at the Majestic Restaurant in Falls Church, Virginia on May 13, 2001. This incident is the basis for nine counts against Le and the other six defendants who allegedly assisted Le in fleeing the scene and the area following the murders. Of the remaining three defendants—Le, Loc Tien Nguyen, and Phu Van Ho—Ho allegedly fled from the Majestic Restaurant with Le immediately after the murders and Nguyen allegedly assisted Le in fleeing to New York City shortly thereafter.

The specific counts at issue here are (i) counts three, four, seven, sixteen, seventeen, and twenty-three, all of which allege that defendants committed assaults with a dangerous weapon in violation of Virginia's brandishing statute, Va.Code § 18.2–282,

---

**3.** Defendants' motion was originally brought with respect to the Fourth Superseding Indictment and renewed, as appropriate, with respect to the corresponding counts of the Fifth Superseding Indictment.

in aid of racketeering,[4] and (ii) count twelve which alleges that Le committed an assault with a dangerous weapon in violation of Virginia's malicious or unlawful wounding statute, Va.Code § 18.2–51, in aid of racketeering. Each of the counts charging that defendants violated Virginia's brandishing statute, Va.Code § 18.2–282, allege the date and location of the alleged criminal act, but not defendants' specific conduct. The nature of that conduct, however, has been provided through discovery. Specifically, counts three and sixteen charge that Nguyen, Quach, who has since pled guilty, and other unindicted OPB members committed an attempted assault with a dangerous weapon on November 23, 2000 in Falls Church, Virginia.[5] The government proffers that on this date Nguyen, Quach, and others traveled to Virginia Beach to kill an individual they believed had killed a friend, but that because they could not find that individual, they instead engaged in a confrontation with a group of black males in a parking lot which ended when Nguyen and another OPB member brandished their guns. Counts four and seventeen charge that Le committed an assault with a dangerous weapon on March 26, 2001 in Falls Church, Virginia which, according to the government, occurred when Le brandished a gun and threatened to shoot a rival gang member during a fight between OPB and a rival gang at the Cafe Dang. And counts seven and twenty-three charge that Le and Quach committed an assault with a

dangerous weapon in Springfield, Virginia when, according to the government, Le, while traveling in a car with Quach in search of rival gang members, brandished a gun and threatened to kill several members of a rival gang in the parking lot of the Great Wall Restaurant.

Count twelve, the only count that charges a violation of Virginia's malicious or unlawful wounding statute, Va.Code § 18.2–51, alleges that Le committed an assault with a dangerous weapon on May 13, 2001 in Falls Church, Virginia. According to the government, this assault arose from the events at the Majestic Restaurant, during which Le shot and wounded Chung Nguyen, in addition to shooting and killing two other persons.

Defendants seek dismissal of these seven counts of the Indictment on the ground that the elements of Virginia's malicious or unlawful wounding statute, Va.Code § 18.2–51, and brandishing statute, Va. Code § 18.2–282, the state laws that the charged assaults allegedly violated, do not match—element-by-element—with the elements of assault with a dangerous weapon under federal law. Thus, the task here is to determine first, whether it is necessary, as defendants contend, that the elements of the state statutes allegedly violated match—element-by-element—with the elements of assault with a dangerous weapon under federal law and second, whether the elements of the state statutes are sufficiently similar to the elements of assault

4. Counts three, four, and seven charge that defendants violated 18 U.S.C. § 1959 when they committed assaults with a dangerous weapon in violation of Virginia law and in aid of racketeering (VICAR counts). Based on the same violent conduct, counts sixteen, seventeen, and twenty-three charge that defendants violated 18 U.S.C. § 924(c) when they used and carried firearms during and in relation to an assault with a dangerous weapon in violation Virginia law in aid of racketeering

(§ 924(c) counts). The § 924(c) counts reallege and incorporate by reference the allegations contained in the corresponding VICAR counts.

5. Because count three alleges that defendants committed an attempted assault, this count alleges that defendants violated Va.Code § 18.2–27, which prohibits attempts, as well as Va.Code § 18.2–282.

with a dangerous weapon such that the Indictment's allegations pass muster under § 1959.

## II.

 Section 1959 provides for the punishment of any individual who "murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual *in violation of the laws of any State or the United States,* or attempts or conspires so to do" for the purpose of entering, maintaining, or increasing his position in a criminal enterprise. 18 U.S.C. § 1959 (emphasis added). Thus, to establish a § 1959 offense the following five elements must be established beyond a reasonable doubt:

(1) that the organization is a RICO enterprise;

(2) that the enterprise was engaged in racketeering activity as defined in RICO;

(3) that the defendant had a position in that enterprise;

(4) that the defendant committed the alleged crime of violence in violation of federal or state law; and

(5) that the defendant's general purpose in so doing was to maintain or increase his position in the enterprise.

*See United States v. Fiel,* 35 F.3d 997, 1003 (4th Cir.1994) (citing *United States v. Concepcion,* 983 F.2d 369, 381 (2d Cir. 1992)); *see also United States v. Rahman,* 189 F.3d 88, 126 (2d Cir.1999) (setting forth the elements of a § 1959 offense). And, because indictments must allege each essential element of the offense charged,[6] an indictment charging a violation of § 1959 must allege that the defendant committed a crime of violence in violation of federal law or the law of the state where the offense was committed.[7] Similarly, the same allegation must be contained in an indictment charging a violation of § 924(c), when the alleged crime of violence during which the defendant allegedly used or carried a firearm is a § 1959 violation.[8]

There is no allegation in the challenged counts of the Indictment that the alleged violent crime violated a federal law.[9] Instead, the Indictment charges that defen-

---

**6.** *See Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) (stating that, pursuant to Rule 7(c), Fed. R.Crim.P., an indictment is insufficient unless it alleges each essential element of the offense); *United States v. Daniels,* 973 F.2d 272, 274 (4th Cir.1992) (same).

**7.** Not addressed or decided here is whether, in addition to these § 1959 elements, a district court must also instruct the jury on the elements of the specific state offense allegedly violated. Yet, there is little doubt that it is appropriate to so instruct the jury. *See United States v. Carrillo,* 229 F.3d 177, 184 (2d Cir. 2000) (stating that "district judges conventionally instruct juries on the elements of the state law offenses..." in RICO cases).

**8.** 18 U.S.C. § 924(c) provides that:
[A]ny person who, during and in relation to any crime of violence ... for which the

person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence ... -
(i) be sentenced to a term of imprisonment of not less than 5 years;
(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

**9.** Assault with a dangerous weapon is a violation of 18 U.S.C. § 113(a)(3) provided, as did not occur here, the assault occurs within the special maritime and territorial jurisdiction of the United States. *See* 18 U.S.C. § 113(a)(3).

dants committed or attempted to commit assaults with a dangerous weapon in violation of Va.Code § 18.2–51, which prohibits malicious or unlawful wounding, or Va. Code § 18.2–282, which prohibits brandishing a firearm.[10] Defendants, therefore, seek dismissal of the challenged counts on the ground that the elements of these state offenses do . not precisely match the elements of assault with a dangerous weapon under federal law.

■ To begin with, it is clear that it is not necessary that the state law alleged to prohibit an assault with a dangerous weapon under § 1959 carry that precise label. In other words, where, as here, an indictment alleges a § 1959 violation based on an assault with a dangerous weapon in violation of Virginia law, it is not necessary that Virginia law include an offense with precisely that label or title. Were the law to require such an identity of label or title, the applicability of § 1959 would be subject to the drafting whims of fifty state legislatures, a result plainly not intended by Congress. Rather, it seems clear that Congress, not wishing to unnecessarily create new crimes, sought to craft § 1959 so that it reached the generic conduct described therein, whatever label a particular

state might use to criminalize that conduct. In other words, it is clear that Congress intended to include within the scope of § 1959, generic conduct amounting to an assault with a dangerous weapon, in violation of state law regardless of what label a state may attach to that conduct.[11]

This result finds firm support in the cases. Although the Supreme Court has not addressed this point with respect to § 1959, it has on three occasions reached this result under other federal statutes that, like § 1959, require that certain generically-defined conduct constitutes a violation of state law. The Supreme Court first reached this conclusion in *United States v. Nardello*, 393 U.S. 286, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969). There, the Supreme Court held that a defendant may be found to have violated the Travel Act, 18 U.S.C. § 1952, which prohibits "extortion . . . in violation of the laws of the State in which committed or of the United States," provided the conduct prohibited by state law comes within the generic definition of extortion, even if the law does not label the crime "extortion." *See Nardello*, 393 U.S. at 293–95, 89 S.Ct. 534 ("We therefore conclude that the inquiry is not the manner in which States classify their

---

**10.** Virginia Code § 18.2–51, entitled "Shooting, stabbing, etc., with intent to maim, kill, etc.," provides that:

> If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided, be guilty of a Class 3 felony. If such act be done unlawfully but not maliciously, with the intent aforesaid, the offender shall be guilty of a Class 6 felony.

Virginia Code § 18.2–282, entitled "Pointing, holding, or brandishing firearm or object similar in appearance," provides that:

> It shall be unlawful for any person to point, hold, or brandish any firearm, as hereinafter described, or any object similar in appearance to a firearm, whether capable of

being fired or not, in such manner as to reasonably induce fear in the mind of another or hold a firearm in a public place in such a manner as to reasonably induce fear in the mind of another being shot or injured.

**11.** It is true that a § 1959 charge based on an assault with a dangerous weapon in violation of state law would fail if the state where the conduct occurred did not criminalize such conduct. *See, e.g., United States v. Marino*, 277 F.3d 11, 30 (1st Cir.2002) ("But for a crime to be chargeable under state law, it must at least exist under state law.") (citing *Carrillo*, 229 F.3d at 184–86). But it is doubtful that this is true for any state, which is why in drafting § 1959, Congress chose to define the required state law violations generically.

criminal prohibitions but whether the particular State involved prohibits the extortionate activity charged."). Thus, the defendant in *Nardello* could be found liable under the Travel Act for violating a Pennsylvania statute prohibiting blackmail because that offense fell within the generic definition of extortion, even though the Pennsylvania statute did not label the crime as extortion. *Id.* at 295, 89 S.Ct. 534. To conclude otherwise, the Supreme Court correctly reasoned, would give controlling effect to minor differences in state offense labeling. *Id.* at 294, 89 S.Ct. 534.[12]

Next, the Supreme Court relied on similar reasoning in *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), in concluding that "in including 'burglary' as a violent crime in 18 U.S.C. § 924(e)'s sentencing enhancement provision for felons' possessing firearms, Congress meant 'burglary' in 'the generic sense in which the term is now used in the criminal codes of most States,'" such that the defendant's sentence was properly enhanced based on a previous Missouri conviction for second-degree burglary. *See Scheidler v. National Organization for Women, Inc., et al.,* 537 U.S. 393, 410, 123 S.Ct. 1057, 154 L.Ed.2d 991 (2003) (citing *Taylor,* 495 U.S. at 598, 110 S.Ct. 2143). And, most recently, in *Scheidler v. National Organization for Women, Inc., et al.,*

the Supreme Court found that liability for extortion under RICO, 18 U.S.C. § 1961(1), which prohibits "any act or threat involving ... extortion ... which is chargeable under State law," did not depend on conduct that violated a state statute expressly prohibiting "extortion," but instead need only violate a statute "capable of being generically classified as extortionate." *Id.* at 409, 123 S.Ct. 1057.

■ Although the Supreme Court has not specifically addressed this issue with respect to § 1959, circuit authority interpreting *Nardello, Taylor,* and *Scheidler* in the context of § 1959 uniformly holds that § 1959 requires that a defendant need only be shown to have committed violent conduct in violation of a state law, regardless of how the state labels the crime.[13] Thus, the Indictment in this instance need not be dismissed simply because the state statutes defendants allegedly violated—Va. Code §§ 18.2-51 and 18.2-282—do not expressly prohibit "assault with a dangerous weapon." Indeed, to conclude otherwise would lead to the nonsensical result that a defendant who committed a generic assault with a dangerous weapon in aid of racketeering in a state that had passed a statute explicitly prohibiting "assault with a dangerous weapon" could be indicted and convicted under § 1959, whereas a defendant

---

**12.** The Supreme Court also reasoned that, by referring to state law, Congress did not intend to incorporate state labels for particular offenses or to eradicate only those activities which any given state expressly denominated "extortion," but instead to aid local law enforcement. *See Nardello,* 393 U.S. at 294, 89 S.Ct. 534.

**13.** *See Marino,* 277 F.3d at 29–30; *United States v. Diaz,* 176 F.3d 52, 96 (2d Cir.1999) (citing *United States v. Miller,* 116 F.3d 641, 675 (2d Cir.1997)); *United States v. Tolliver,* 61 F.3d 1189, 1208–09 (5th Cir.1995); *United States v. Orena,* 32 F.3d 704, 714 (2d Cir.

1994) ("[O]nly a 'generic definition' of an underlying state crime is required in a RICO indictment, as distinguished from 'the elements of the penal codes of the various states where acts of racketeering occurred.'") (citing *United States v. Bagaric,* 706 F.2d 42, 62 (2d Cir.1983)); H.R.Rep. No. 91–1549, at 4032 (stating that with regard to RICO, 18 U.S.C. § 1961, "state offenses are included by generic designation"). *But see United States v. Pimentel,* 346 F.3d 285, 302–03 (2d Cir. 2003) (expressing concern, despite prior Second Circuit holdings to the contrary, that the district judge did not instruct the jury on the state law elements of the underlying crime of

committing the same act in aid of racketeering activity in a state that used a different label to criminalize "assault with a dangerous weapon" would escape § 1959 liability.[14]

While it is clear that a § 1959 charge based on an assault with a dangerous weapon under state law does not depend on the label state law attaches to this generic conduct, it remains to be determined whether the Virginia statutes cited in the Indictment cover conduct that falls within the scope of a generic assault with a dangerous weapon. Defendants contend that they do not. And in support of this contention, defendants point to differences between the elements of the state offenses and the elements of assault with a dangerous weapon under federal law. For instance, defendants contend that an element of the crime of assault with a dangerous weapon—the use of a dangerous weapon—is not an element of either malicious or unlawful wounding or brandishing.[15] This and other differences, defendants argue, compel the conclusion that the challenged counts of the Indictment do not allege each of the elements of brandishing or malicious wounding under Virginia law and thus are insufficient and must be dismissed. *See Hamling,* 418 U.S. at 117, 94 S.Ct. 2887 (holding that an indictment that fails to allege each essential element of the offense is insufficient and must be dismissed); *Daniels,* 973 F.2d at 274 (same).

■ Yet, defendants' argument is flawed in two distinct respects. First, while it is true that a defendant cannot be found to have violated § 1959 unless the alleged violent conduct violated a state law,[16] it is not proper in making this determination to rely exclusively on a comparison between the elements of the state statute and the elements of the violent crime under federal law. Instead, the proper comparison is between the elements of the state statute and the elements of the violent crime, as it is generically defined. Second, in making this comparison, a court need not find that the elements are precisely the same, but in-

violence); *Carrillo,* 229 F.3d at 186 (2d Cir. 2000) (same).

**14.** *See Taylor,* 495 U.S. at 590–91, 110 S.Ct. 2143 ("That would mean that a person convicted of unlawful possession of a firearm would, or would not, receive a sentence enhancement [under the statute] based on exactly the same conduct, depending on whether the State of his prior conviction happened to call that conduct 'burglary.' "); *Nardello,* 393 U.S. at 294, 89 S.Ct. 534.

**15.** *Compare United States v. Sturgis,* 48 F.3d 784, 786 (4th Cir.1995) (setting forth the elements of assault with a dangerous weapon under 18 U.S.C. § 113(c)) *with* Va.Code § 18.2–282 (providing that a defendant may be found liable for brandishing an object similar in appearance to a firearm "whether capable of being fired or not") *and Williams v. Commonwealth,* 13 Va.App. 393, 395–98, 412 S.E.2d 202 (1991) (stating that a defendant may be found liable of malicious or unlawful

wounding for a blow with the bare fist even though the first is not regarded as a dangerous weapon).

**16.** *See Scheidler,* 537 U.S. at 410, 123 S.Ct. 1057 (finding that the defendants could not be found liable under RICO for extortion in violation of state law because the state extortion offense defendants allegedly violated was not sufficiently similar to the crime of extortion as it is generically defined); *Nardello,* 393 U.S. at 295, 89 S.Ct. 534 ("We therefore conclude that the inquiry is not the manner in which States classify their criminal prohibitions but whether the particular State involved prohibits the extortionate activity charged."); *Marino,* 277 F.3d at 30 ("But for a crime to be chargeable under state law, it must at least exist under state law.") (citing *Carrillo,* 229 F.3d at 184–86); *Bagaric,* 706 F.2d at 63 ("Absent an allegation that the racketeering act is not prohibited *at all* under state law, . . . accurate generic definitions of the crimes charged were sufficient.").

stead must determine whether the state offense, regardless of how it is labeled, "corresponds in substantial part" to the violent conduct. *Taylor*, 495 U.S. at 599, 110 S.Ct. 2143; *see also Rose v. Bartle*, 871 F.2d 331, 362 (3d Cir.1989). If it does, the defendant may be indicted and convicted under § 1959. *See Taylor*, 495 U.S. at 599–600, 110 S.Ct. 2143. Thus, in this instance, the last remaining task is to determine whether the elements of malicious or unlawful wounding and brandishing a firearm "correspond in substantial part" to assault with a dangerous weapon, as generically defined. *Taylor*, 495 U.S. at 599, 110 S.Ct. 2143. If so, the challenged counts of the Indictment are sufficient and defendants' motion to dismiss must be denied.[17]

A comparison of the elements of Va Code §§ 18.2–51 and 18.2–282 makes clear that these elements correspond in substantial part to the elements of a generic assault with a dangerous weapon. The elements of a malicious or unlawful wounding under § 18.2–51—(i) a malicious or unlawful shot, cut, wound, or other bodily injury to any person (2) with the intent to maim,

disfigure, disable or kill that person[18]—are adequately similar to the elements of assault with a dangerous weapon under 18 U.S.C. § 113(c) as well as the elements of aggravated assault as set forth in Model Penal Code § 211.1(2).[19] *See Sturgis*, 48 F.3d at 786; Model Penal Code § 211.1(2) (2001) (providing that a person is guilty of "aggravated assault" if he "(a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon"). The same conclusion obtains with regard to the elements of brandishing under § 18.2–282, which are, (i) the pointing, holding, or brandishing of a firearm, or other object similar in appearance (ii) in such manner as reasonably to induce fear in the mind of the victim. This conclusion is further supported by the similarity between these elements and the elements of assault as defined in the majority of states and at common law.[20] *See Commonwealth*

---

17. While in determining the sufficiency of the charged counts of the Indictment, it may seem tempting to compare the alleged facts of the charged offense to the state statute which the defendants allegedly violated, the Supreme Court has made clear in *Taylor* that such a comparison is not proper. *See Taylor*, 495 U.S. at 600–02, 110 S.Ct. 2143. Instead, as stated, the proper comparison is between the violent crime as generically defined and the state statute.

18. *See* Va.Code § 18.2–51; *Robertson v. Commonwealth*, 31 Va.App. 814, 525 S.E.2d 640, 645 (2000).

19. Controlling authority has not made clear precisely how to determine the elements of a generic assault with a dangerous weapon or any other violent crime set forth in § 1959. The Supreme Court has, however, relied on a variety of sources, including (i) the Model

Penal Code, (ii) the definition in the majority of states, and (iii) LaFave and Scott's criminal law treatise, to generically define criminal conduct in other contexts. *See Scheidler*, 537 U.S. at 410, 123 S.Ct. 1057; *Taylor*, 495 U.S. at 598, 110 S.Ct. 2143; *Nardello*, 393 U.S. at 290 n. 6, 89 S.Ct. 534. It is therefore appropriate in this context to look to these sources, as well as the elements of the offense under federal law and at common law.

20. *See Smith v. Commonwealth*, 2002 WL 1611520, at *3 (Va.App.2002) (citing *Bennett v. Commonwealth*, 35 Va.App. 442, 449, 546 S.E.2d 209 (2001)) (stating that "assault" was defined at common law as "an attempt or offer, with force and violence, to do some bodily hurt to another, whether from wantonness or malice, by means calculated to produce the end if carried into execution...."); 6 Am.Jur.2d *Assault and Battery* §§ 1, 34 (stating that state statutes define "assault," as

*v. Alexander,* 260 Va. 238, 531 S.E.2d 567, 568 (2000) ("The threat to use deadly force by brandishing a deadly weapon has long been considered an assault.") (citing *Harper v. Commonwealth,* 196 Va. 723, 733, 85 S.E.2d 249 (1955)). That the elements of the state offenses do not precisely match the elements of an assault with a dangerous weapon does not compel a different result. *See Taylor,* 495 U.S. at 599, 110 S.Ct. 2143 (stating that the elements need only "correspond in substantial part").

In sum, because the elements of malicious or unlawful wounding and brandishing correspond in substantial part to the elements of assault with a dangerous weapon, as generically defined, the challenged counts of the Indictment are sufficient and defendants' motion to dismiss must be denied.[21]

An appropriate order has issued.

a general rule, as "a demonstration of an unlawful intent by one person to inflict immediate injury or offensive contact on the person of another then present," and require a heightened mental state or resulting bodily harm for aggravated assault).

21. Nguyen, by counsel, also seeks to dismiss counts three, sixteen, and twenty-eight on the ground that these counts do not allege a racketeering enterprise, an essential element of the charged offenses. While Nguyen is correct that an indictment must contain a statement of "the essential facts constituting the offense charged," Nguyen's motion to dismiss must be denied because counts three, sixteen, and twenty-eight adequately allege a racketeering enterprise. *See* Rule 7(c), Fed. R.Crim.P.; *United States v. Smith,* 44 F.3d 1259, 1263–64 (4th Cir.1995). Specifically, count three realleges and incorporates by reference paragraphs one through eight of count one which sets forth the racketeering enterprise and count sixteen realleges and incorporates by reference the allegations in count three. Moreover, count twenty-eight, which charges six defendants including Nguyen as accessories after the fact to crimes committed by Le, realleges and incorporates by reference the allegations in counts eight, nine, ten, eleven, and twelve, which reallege and incorporate by reference paragraphs one through eight of count one. There is no doubt that counts three, sixteen, and twenty-eight adequately allege a racketeering enterprise because, while each count of the Indictment must stand on its own, it is well-settled that realleged and incorporated paragraphs from other counts "may be considered in determining whether a count properly charges an offense." *Smith,* 44 F.3d at 1265 (citing Rule 7(c)(1), Fed.R.Crim.P.).